IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BILL SALTER ADVERTISING, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-0720-CG-M |
| | ) | |
| CITY OF ATMORE, a municipal | ) | |
| corporation of the State of Alabama, and | ) | |
| ALLEN NIX, as Building Inspector of | ) | |
| said City; and TROY KING, as Attorney | ) | |
| General of the State of Alabama, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the court on plaintiff's motion for summary judgment (Docs. 42 - 44), the response of the defendants (Doc. 50) and plaintiff's reply (Doc. 51); the defendants' motion for summary judgment (Docs. 55-57), plaintiff's response (Doc. 59) and defendants' reply (Doc. 61); and defendants' motion to strike (Doc. 60) and plaintiff's response (Doc. 62).

The court finds, infra, that the affidavit of David McCurdy is not inherently contradictory to McCurdy's prior testimony and that, therefore, the  motion to strike the affidavit is due to be denied.  The court also finds that plaintiff has standing to maintain its suit; that this court should not abstain from hearing the case, and that plaintiff's claims for damages are not mooted by the enactment of a new sign ordinance.  However, because the court further finds that the old sign ordinance's restriction on speech was constitutional, summary judgment is due to be granted in favor of defendants and denied as to plaintiffs.

1

**FACTS**

Plaintiff, Bill Salter Advertising, Inc., is a Florida corporation in the business of outdoor advertising in the states of Alabama and Florida. (Amended Complaint, Doc. 34).  Plaintiff's claims against the defendants, the City of Atmore, Atmore's building inspector, Allen Nix, and the Attorney General of the State of Alabama, Troy King, arise from the application of section 9.5 of a local ordinance (hereinafter "Ordinance") promulgated by Atmore in 1998. (Id.). Specifically, the Ordinance contains a sign regulation which, according to plaintiff, "impermissibly infringes upon federal and state constitutional rights of the Plaintiff and others similarly situated." (Id.).

Plaintiff had various billboards located in the City of Atmore at the time Atmore passed the Ordinance. (Id.).  The plaintiff's established billboards were located on properties belonging to various landowners. (Id.).  Pursuant to section 9.52 of the Ordinance, plaintiff's  preexisting signs were properly permitted, nonconforming signs[1], and allowed to remain subject to several conditions. (Doc 1-2, Ex. A at 4)  Of particular relevance is section 9.521 of the Ordinance, which stipulates that "[i]f any nonconforming sign is removed or destroyed or becomes 50% or more structurally deteriorated as determined by the Building Inspector, then the replacement sign shall be in conformance with the requirements of this Ordinance." (Id.).

In September 2004, Hurricane Ivan damaged many of the plaintiff's signs. (Id.). Consequently, plaintiff sought permits from Nix to repair the damaged signs. (Id.).  Plaintiff asserts that it provided documentation to the defendants that the signs sustained less than 50%

---

[1] Note 7 of the Ordinance bans any new outdoor advertising off-premise signs, but states that "[a]ll existing off-premise signs and billboards are [] grandfathered."  (Doc. 1-2, Ex. A at 12).

structural damage, but the defendants refused to allow the plaintiff to rebuild its signs to their original sizes.  (Id.).  On October 11, 2005, the plaintiff appealed the denial to the City of Atmore Board of Zoning Adjustments, and the Board denied the appeal.  (Id.).  Plaintiff proceeded to submit an application to erect a new outdoor advertising sign at 1332 South Main Street, within the City of Atmore, to the Alabama Department of Transportation (hereinafter "DOT").[2]  (Id. at 4).  The DOT issued two letters in which it denied plaintiff's application and reasoned that, according to Note 7, the City of Atmore's Ordinance does not allow any new outdoor advertising off-premise signs.  (Doc. 1-3, Ex. B and Doc. 1-4, Ex. C).

　　　Plaintiff's amended complaint attempts to attack the Ordinance in its entirety, contending that it violates the First and Fourteenth Amendments to the U.S. Constitution, along with analogous provisions of the Alabama Constitution, in several ways.  (Doc. 34).  Specifically, plaintiff alleges that the Ordinance creates a prior restraint on speech and regulates signs based upon content in that certain signs are exempt from permit regulations.[3]  (Id. at 4-7).  Moreover, plaintiff contends that the Ordinance grants defendants unbridled discretion due to section 9.521; fails to include a time limit within which permitting decisions are to be made; and lacks objective grounds for denying permit applications.  (Id. at 4-5).  Plaintiff seeks to enjoin defendants from enforcing the Ordinance, requests a judgment declaring the ordinance void in its entirety, and claims damages for lost revenues, lease payments and sign materials.  (Id.).

---

[2] It is unclear, as plaintiff fails to specify, whether 1332 Main Street, the location where plaintiff sought to erect a  "new sign," is where one of the plaintiff's damaged existing off-premise signs stood.

[3] Plaintiff's complaint cites the exemptions contained in section 9.53 of the Ordinance, albeit the absence of any suggestion that plaintiff's application would fall under any of them. (Doc. 34-1 at 5-6).

Defendants moved to dismiss plaintiff's complaint contending that the plaintiff lacks standing to challenge the entire Ordinance because plaintiff only claims injury under particular provisions of the Ordinance, that the claims are not ripe because plaintiff never applied to the City for a permit, and that plaintiff's claims should be dismissed based upon § 6-6-440 of the Alabama Code because the claims were already litigated in state court. (Doc. 11).  This court found that plaintiff's standing is limited to challenging the constitutionality of the subsections of the Ordinance under which its applications were denied., § 9.521 and Note 7. (Doc. 69). The court also found that these claims are ripe for resolution and that the case should not be dismissed based upon § 6-5-440 of the Alabama Code. (Doc. 69).

Defendants' current motion and responses re-allege the arguments asserted in their motion to dismiss[4] and also contends 1) that plaintiff lacks standing to challenge the Ordinance's effect on noncommercial speech, 2) that plaintiff cannot prove that it suffered any injury, 3) that the court should abstain under Federal Law and the <u>Colorado River</u> abstention doctrine, and 4) that the enactment of Atmore's new sign Ordinance render's plaintiff's claim moot.  Plaintiff contends 1) that it has standing to bring its claims, 2) that its claims are not moot, 3) that Atmore's sign Ordinance violates the First Amendment and 4) that the Ordinance's provisions are not severable and therefore, that the entire Ordinance should be stricken.


**LEGAL ANALYSIS**

**A. Motion to Strike Affidavit**

---

[4] The court did not rule on the motion to dismiss until after defendants filed their motion for summary judgment.

Defendants move to strike the September 2006 affidavit of David McCurdy on the basis that it contradicts prior testimony.  An affidavit may be stricken as a sham when it directly contradicts, without explanation, a witness's previous sworn testimony. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003); see also Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) ("[A] party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." (internal quotations and citation omitted)).  When an affidavit is contradictory to the extent that it is "inherently inconsistent" with deposition testimony, a court should disregard that affidavit as a sham and exclude it from the evidence considered in a motion for summary judgment. Rollins, 833 F.2d at 1530; Lane v. Celotex Corp., 782 F.2d 1526, 1531 (11th Cir. 1986).

Defendants object to paragraph 3 of Mr. McCurdy's affidavit which states as follows:

> After Hurricane Ivan passed through the city of Atmore, Chuck Riley, Salter's account executive whose territory includes Atmore, went to Atmore to conduct damage assessment.  While there, he repaired one of the signs just outside the city limits.  We gave Mr. Riley a crew from Masterbilt, an outdoor sign construction company out of Arab, Alabama, to go start working in Atmore because Mr. Riley's income is derived primarily from signs in the State of Alabama, particularly Atmore.  The crew had the capability to rebuild the signs in two weeks' time.  Crews were also sent to Greenville, Monroeville, and Frisco City, Alabama.  We did not start our repair work in Milton, Florida because of electricity and fuel problems, but those were resolved within a few weeks.

(McCurdy Affid.  Sept. 6, 2006, ¶ 3) (emphasis added).  At his deposition, McCurdy stated that because of fuel prices and problems getting fuel and electricity, plaintiff started repairs in Milton. (McCurdy Depo. pp. 96-97).  When asked how long that lasted, McCurdy responded:

> I don't remember, it was a month or more, I would think.  You know, if I remember right.  Because you couldn't get gas, you couldn't get fuel, a lot of the places were knocked out.

(McCurdy Depo. p. 97).  When asked how soon plaintiff got all the signs back up in Milton,
McCurdy responded: "Oh, I don't know, it was months." (Id.).  When asked when he estimated
in his best judgment the signs in Atmore could have been back up, McCurdy responded:

> Oh, couple three months.  I mean, we would have – we would have possibly hired
> more crews to go around if we would have had those areas.  You know, we were
> moving, because basically those nine signs were what we had to advertise in
> Atmore, we wanted them back up.

(McCurdy Depo. p. 98).  McCurdy further testified that plaintiff was going to use Harold House
to rebuild the signs. (Id.).  Plaintiff hired contractors to build signs as it is not in the building
business and Mr. House was with a company called Master Built at that time. (Id. at 104).

After reviewing the above testimony, the court finds that the affidavit does not directly
contradict McCurdy's prior testimony.  McCurdy's deposition testimony indicates that the
shortages of fuel and electricity lasted a month or more and because of those conditions, plaintiff
focused on the signs in Milton first.  McCurdy's later statement that plaintiff did not start repair
work in Milton because of electricity and fuel problems, but that the problems were resolved
within a few weeks does not contradict the earlier statement.  First, the difference between "a
month or more" and "a few weeks" is small, especially when you consider the context of the
statements.  The deposition testimony indicates that "a month or more" was just a vague estimate
or guess, as McCurdy stated first that he did not remember, and then after stating "a month or
more" added "I would think."  Clearly "a month or more" was not a precise calculation or clear
memory.  Secondly, McCurdy's affidavit statement appears to refer to the fuel and electricity
problems that delayed the start of work in Milton.  Whereas, the deposition testimony appears to
be referring to the general fuel and electricity problems that may have continued after plaintiff
began repairing the Milton signs.  Read together, the statements indicate that the problems, at

6

least in Milton, were sufficiently alleviated within "a few weeks" for plaintiff to begin repairing the signs there, but that fuel shortages and power outages were still a problem in plaintiff's business areas for "a month or more."

As to McCurdy's statements about when the signs in Atmore could have been back up, the court finds the statements are also not so inherently contradictory that they should be stricken.  McCurdy stated at his deposition that the signs in Atmore could have been back up in "[o]h, couple three months" is again a vague estimate.  And McCurdy's follow up deposition testimony indicates that plaintiff could have shortened the time period by hiring more crews and that plaintiff would have made every effort to get them back up as soon as possible because the Atmore signs were very important to plaintiff.   As such, the court finds that McCurdy's later statement : "[t]he crew had the capability to rebuild the signs in two weeks' time" is not so contradictory that it should be stricken.  Moreover, the court finds that the difference in statements merely raises an issue as to the amount of damages, not whether plaintiff should recover anything.  Given that there are other unresolved issues as to the amount of damages, the court finds that striking the statement would not result in a different result on this motion for summary judgment.

Defendants also point out that McCurdy said in his deposition that plaintiff was going to use Harold House to rebuild the signs but states in his affidavit that a crew from Masterbilt was given the Atmore assignment.  However, plaintiff's deposition testimony also indicates that Mr. House was with Master Built at that time.   Furthermore, the job could not be completed at that time and thus, the company that eventually rebuilt the signs may not have been the company or persons who were originally given the job or who would have repaired the signs if there had

been no dispute between plaintiff and defendants.  Thus, the court finds the statements are not

necessarily contradictory.  Plaintiff also points to evidence and testimony of other witnesses as

contradictory.  However, when statements in a party's affidavit differ or vary from its other

evidence before the court, the discrepancies create an issue of credibility, or go to the weight of

the evidence, and should be resolved by the trier of fact.  See Tippens v. Celotex Corp., 805 F.2d

949, 954 (11th Cir. 1986) (citation omitted) ("In light of the jury's role in resolving questions of

credibility, a district court should not reject the content of an affidavit even if it is at odds with

statements made in an early deposition.").

 Defendants also object to McCurdy's statements in paragraph five of his affidavit which

states:

> I went to Atmore in Fall 2004 to inspect each damaged sign.  I visited all nine of
> the sites and prepared cost estimates to repair each sign.  The estimates were
> based on my knowledge of the prices of materials and contract labor at the time.
> They were also based on by (sic) experience as a maintenance planner at
> Monsanto.

(McCurdy Affid. Sept. 6, 2006, ¶ 5).  At McCurdy's deposition, he stated that he based the

hourly charge estimate on "what people have been charged by Master Built before the storm"

and determined the amount of time it takes to build a sign:

> From folks like, folks at Master Built. You know, if you sent them out there to
> build a sign and hand them the material there, they could build a 10 by 24, it was
> taking about six, 6 hours.  Some crews were faster than others, but basically about
> six hours to put this in the ground, put this structure up.

(McCurdy Depo. pp. 104-105).  The court finds that McCurdy's affidavit statement merely

supplements his deposition testimony.  Although McCurdy admitted at his deposition that he had

little experience in the outdoor advertising industry and in building signs and was brand new to

the company, that does not mean that McCurdy had no knowledge on the subject or that he did

not rely on his prior job experience and knowledge.   Accordingly, the court finds that the statements are not inherently contradictory.

The motion to strike the affidavit is due to be denied.


**B. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle

Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## C. Standing

Defendant argues that plaintiff cannot establish that it has anything more than a de minimus interest in noncommercial speech and therefore, has no standing to challenge the ordinance's effect on noncommercial speech.  Defendants contend that there is no evidence plaintiff owned any signs which contained noncommercial speech and that plaintiff should be

estopped from producing any such evidence now because they refused to do so earlier. However, McCurdy testified at his deposition that plaintiff sometimes did noncommercial advertising for the city of Atmore or the chamber of commerce. (McCurdy Depo. p. 24-25). Although McCurdy stated at his deposition that, to his knowledge, plaintiff only advertised for the city once a year - to promote "Williams Station Day,"  McCurdy later stated in his affidavit that plaintiff's "noncommercial advertisers include several local Atmore churches and Sav-A-Life, which is a non-profit organization that provides resources to pregnant women." (McCurdy Affid. June 19, 2006, ¶ 3).   This is consistent with plaintiff's response to defendants' request for admission which attached McCurdy's affidavit and a copy of plaintiff's total occupancy report for Atmore as of May 10, 2006. (Doc. 56, Ex. C).  The occupancy report lists nine signs (apparently the nine signs at issue in this case),  two of which list Emmanuel's Faith Center, and Save-A-Life as the client. (Id.).  The court finds that plaintiff has sufficiently demonstrated for the purpose of summary judgment that it has a significant noncommercial interest with regard to the signs at issue in this case.


**D. Proof of Injury**

Defendants contend that plaintiff cannot prove that is suffered the damages it claims. Specifically, defendants assert that plaintiff created its own delay, plaintiff's expert is not qualified to render an opinion on the amount of damages and otherwise disputes plaintiff's calculations because they are based on a 14-month delay, include lease payments to landowners, expenses of lost materials and clean-up expenses.  After review of the parties' evidence and arguments, the court finds that there is sufficient evidence for a jury to find that plaintiff incurred damages, but that there is a genuine issue of fact as to the amount of plaintiff's damages.  Thus, the court finds that summary judgment cannot be granted as to the amount of damages sustained by plaintiff.

**E. Colorado River Abstention**

A federal court may abstain in the face of duplicative state proceedings when "exceptional" circumstances exist. <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 818 (1976). Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Colorado River</u>, 424 U.S. at 813. The court must first determine whether a state court action is parallel to the federal action. Assuming it were shown that there is a parallel action, defendants then have the burden of showing that "exceptional circumstances" justify abstention. <u>Jackson Hewitt, Inc. v. J2 Fin. Services</u>, 901 F. Supp. 1061 (E.D. Va. 1995).

> The <u>Colorado River</u> doctrine, as modified by the Supreme Court in <u>Moses H. Cone</u>, [460 U.S. 1 (1983),] requires federal courts to consider six factors in determining whether abstention in favor of a concurrent state proceeding is appropriate. These factors are "(1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties."

<u>Private Business, Inc. v. Alabama Exterior Supply, Inc.</u>, 2000 WL 33156437, *6 (S.D. Ala. 2000) (quoting <u>Transouth Financial Corp. v. Bell</u>, 149 F.3d 1292 (11th Cir. 1998)). The Supreme Court has mandated, when determining whether to dismiss a federal action because of parallel state litigation, that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 (1983). As this court explained in a previous case:

> The law is clear that federal court has a "virtually unflagging obligation" to exercise jurisdiction once jurisdiction is established. <u>Moses H. Cone Memorial Hospital. v. Mercury Construction Corp.</u>, 460 U.S. 1 (1983). <u>Moses H. Cone</u>, involved a North Carolina hospital that filed suit against an Alabama contractor and a North Carolina architect in state court. The contractor then filed a motion to compel arbitration in federal court based upon diversity jurisdiction. The district court stayed the motion, pending resolution of the state action, based on the conclusion that the federal and state actions involved the identical issue of arbitrability. The Court of Appeals for the Fourth Circuit reversed the stay and the Supreme Court affirmed, noting the narrow application of the abstention doctrine: 'Abstention from the exercise of federal jurisdiction is the exception, not the rule.

12

'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' Cone, 460 U.S. at 14, quoting Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959).  The Supreme Court has stated that" [abstention] was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." Alabama Pub. Serv. Comm'n. v. Southern R. Co., 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002, 1015 (1951) (Frankfurter, J., concurring in result).

Private Business, Inc. v. Alabama Exterior Supply, Inc.,  2000 WL 33156437 at *6

In this case that defendants have not met their burden.  "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Ambrosia Coal and Const. Co. v. Pages Morales,  368 F.3d 1320, 1331 (11th Cir. 2004) (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976)).

Defendants admit that the state court has not assumed jurisdiction over any property (factor 1), that any inconvenience in litigating in federal court are slight (factor 2), that dismissal would not necessarily avoid piecemeal litigation (factor 4), and that there is no pressing state law issue favoring the state forum (factor 5). (Doc. 56, p. 20).  Defendants argue that the remaining two factors mandate dismissal of this case.  According to defendants, a ruling in favor of plaintiff in this case would conflict with the prior rulings of the Alabama state court.  However, plaintiff asserts that it has accepted the rulings of the Board of Zoning Adjustments and rebuilt the signs to the conforming sizes.  Plaintiff states that it only seeks damages for the period of time in which the defendants refused to permit them to rebuild any signs at all, pursuant to their enforcement of unconstitutional provisions of the sign ordinance. (Doc. 59, p. 9).  The court finds that defendants have not shown that the state court has addressed or will address plaintiff's

constitutional claims and the damages plaintiff seeks.[5]   After review of all six factors, the court

finds that defendants have not demonstrated exceptional circumstances, and thus the court will

not abstain from proceeding with this action

**F. The New Sign Ordinance**

In June 2006, the Atmore City Council adopted Ordinance 50-2006 which contains

significantly different language than the old sign ordinance.   The new Ordinance only prohibits

new off premise signs or billboards <u>with a commercial message</u>.   The new Ordinance also

contains exemptions and partial exemptions that defendants contend are content-neutral and are

based on the time, place and manner of the signs.   The new Ordinance does not contain the

exemptions contained in the old Ordinance which plaintiff argues are content-based.   The new

Ordinance also expressly provides time limitations in which permitting decisions must be made

and no longer contains the same language which plaintiff alleges resulted in the Building

Inspector having unbridled discretion.

[F]ederal courts lack jurisdiction to hear and decide cases where changes in law have

rendered the case moot." <u>National Advertising Co. v. City of Miami</u>, 402 F.3d 1329, 1332 (11th

Cir. 2005).   Generally, "the repeal or amendment of an allegedly unconstitutional statute moots

legal challenges to the legitimacy of the repealed statute." <u>Id.</u>   However, defendants

acknowledge that there are some exceptions to this rule.

"Because of the possibility that the defendant could simply return to his old ways, it has

long been the rule that voluntary cessation of allegedly illegal conduct ... does not make the case

moot." <u>Seay Outdoor Advertising v. City of Mary Esther</u>, 397 F.3d 943, 946-947 (11th Cir.

2005).   Without this "voluntary cessation doctrine" defendants could simply return to their

---

[5] In fact, the Board of Zoning Adjustment "cannot entertain a constitutional challenge
and would be without authority or power to make a determinative ruling on such a challenge."
<u>Budget Inn of Daphne, Inc. v. City of Daphne</u>, 789 So.2d 154, 158 (Ala. 2000).

previous ways.  "However, governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1328-1329 (11th Cir. 2004).  "[I]n the absence of evidence indicating that the government intends to return to its prior legislative scheme, repeal of an allegedly offensive statute moots legal challenges to the validity of that statute." National Advertising, 402 F.3d at 1334.  There must be "evidence of a 'substantial likelihood' that the challenged statute will be reenacted" for the voluntary cessation doctrine to apply. Id. "Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions." Id.  In this case, the plaintiff has offered no affirmative evidence indicating that the City of Atmore will reenact any of the challenged portions of the old sign Ordinance.  Thus, the voluntary cessation doctrine does not save plaintiff's claims from mootness.

If plaintiff has a vested property right in a sign or permit, the claim is not moot.   "[A] party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law." Crown Media, LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004) (citation omitted).   "Whether a plaintiff has obtained vested property rights in a sign or permit is a question of state law." Tanner Advertising Group, LLC v. Fayette County, 451 F.3d 777, 787 (11th Cir. 2006). Both parties cite Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 158 (Ala. 2000) in support of their opposing positions.  In Budget Inn, the Supreme Court of Alabama found that the owner of the sign at issue had a vested property right in its non-conforming use of the sign and that a mere change in legal ownership or operating name did not alter that status. Id.  The Court stated that a property owner would be allowed to perform routine upkeep on such a sign, but indicated that the situation would be different if a property owner wished "to enlarge, expand, or rebuild his nonconforming use", or change "the nature and character of the nonconforming use." Id. at 160

15

(citations omitted).  The Circuit Court of Escambia County has found that "[t]he majority of the subject signs were either destroyed or became fifty percent or more structurally deteriorated as a result of hurricane Ivan." (Doc. 50, Ex. 2).  While plaintiff disputes that the signs were damaged by 50% or more, it is clear that the signs require more than mere routine upkeep.  The court finds that plaintiff has no vested right in the use of signs that were damaged by 50% or more and must be rebuilt.

However, the court finds the third exception to mootness is applicable here.  "[W]hen a plaintiff requests damages, as opposed to only declaratory or injunctive relief, changes to or repeal of the challenged ordinance may not necessarily moot the plaintiff's constitutional challenge to that ordinance." <u>Crown Media</u>, 380 F.3d at 1325 (citation omitted).  As previously discussed, the court finds that there is sufficient evidence for a jury to find that plaintiff incurred damages.  The alleged damages have already occurred and are not alleviated or eliminated by the new Ordinance.  Because plaintiff's damage claims are unaffected by the new Ordinance, the court finds that those claims are not moot.

## G. Constitutionality of Ordinance's Restriction on Speech

Plaintiff contends that the sign Ordinance's ban on all off-premise signs is an unconstitutional restriction on speech.[6]  Defendants contend that the Ordinance is constitutional

---

[6] The court has limited plaintiff's challenges to the constitutionality of the subsections of the Ordinance under which its applications were denied., section 9.521 and Note 7. (Doc. 69). As the court explained in its ruling on defendants' motion to dismiss, the complaint fails to establish that plaintiff has sustained an injury under other provisions of the Ordinance:

> Here, the plaintiff's complaint, in which plaintiff assails the constitutionality of the entire Ordinance, fails to establish that it has sustained an injury under each provision of the Ordinance.  For instance, plaintiff posits that the exemptions contained in section 9.53 of the Ordinance are unconstitutional; however, the plaintiff does not articulate how these exemptions may have injured plaintiff. (Doc. 34-1 at 5-6).  Similarly, plaintiff does not describe an injury emanating from the absence of a time limit within which permitting decisions are to be made.  (<u>Id.</u> at 4-5).

and should be analyzed under the intermediate scrutiny standard because it only prohibited new off-premise commercial advertising, not noncommercial speech.  Section 9.521 states the following:

> If any nonconforming sign is removed or destroyed or becomes 50% or more structurally deteriorated as determined by the Building Inspector, then the replacement sign shall be in conformance with the requirements of this Ordinance.

ATMORE, ALA., ZONING ORDINANCE, § 9.521 (1998).  Note 7 to the Ordinance states:

> All existing off-premise signs and billboards are hereby grand fathered.  At such time as any existing off-premise sign or billboard is removed or destroyed, any replacement sign or billboard shall be in conformance with the provisions of this Ordinance.  No new off-premise signs or billboards will be permitted in any zone, nor shall a permit be issued for any permitted on-premise sign for any premises on which there exists a grand fathered off-premise sign or billboard unless the off-premise sign or billboard is first permanently removed.

Id. at Note 7.

Defendants argue that the Ordinance only prohibits new off-premise signs which, by definition, does not include noncommercial signs.  In support of their contention, defendants cite Southlake Property Associates, Ltd. v. City of Morrow, Ga., 112 F.3d 1114 (11th Cir. 1997) which found that, under the ordinance at issue in that case, a sign bearing a noncommercial message is "onsite" wherever the speaker places it.  In Morrow, the Eleventh Circuit based this conclusion at least in part on the city's own authoritative construction of the ordinance, including its implementation and interpretation.  The Eleventh Circuit found that the city was entitled to such deference where its interpretation is "based on a permissible construction of the ordinance." Id. at 1119.  If possible, any ambiguities should be construed "in a manner which avoids any constitutional problems." Id. (citations omitted).  In Morrow, the City maintained that it had "never interpreted its Ordinance to disallow noncommercial speech." Id. at 1117.  Further, the City had "documented a three-year history of permitting noncommercial off-premise messages to be posted on commercial properties throughout the City" and had "never denied a sign permit for

(Doc. 69, p. 7).

noncommercial speech." Id.

The Eleventh Circuit has since revisited and reaffirmed the holding of Morrow, explaining that "according to the law of this Circuit, noncommercial messages are by definition onsite signs..." Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1344 (11th Cir. 2004). Courts within this Circuit, including this court, have uniformly followed Morrow and Coral Springs. See e.g. Bill Salter Advertising, Inc. v. City of Brewton, Ala., 486 F.Supp.2d 1314, 1331 (S.D. Ala. 2007) ("Eleventh Circuit precedent is clear that all noncommercial speech is onsite in nature and thus the prohibition against billboards does not implicate noncommercial signs." citation omitted); Lockridge v. City of Oldsmar, Fla., 475 F.Supp.2d 1240, 1254 (M.D. Fla. 2007) (off-site billboard ban "did not favor commercial over noncommercial speech because the prohibitions on billboards did not apply to noncommercial signs"; Advantage Advertising, L.L.C. v. City of Pelham, Alabama, 2004 WL 3362497, *11 (N.D. Ala. Sep. 10, 2004) ("Applying the law of Morrow to this case, the regulation which restricts only offsite signs could not, by definition, restrict noncommercial speech..."); Action Outdoor Advertising JV, L.L.C. v. Town of Shalimar, Fla., 377 F.Supp.2d 1178, 1193 (N.D. Fla. 2005) ("given the Eleventh Circuit's clear instruction that all noncommercial speech is inherently onsite, the phrase further defining a billboard as providing information concerning any activity 'that takes place on property other than that where the sign is located' eliminates noncommercial speech from the scope of the definition's reach..."). Thus, Eleventh Circuit precedent is clear that an ordinance that restricts offsite signs cannot, by definition, implicate noncommercial speech.

The constitutionality of a government regulation on commercial speech must be evaluated under the following four-part test: (1) whether the commercial speech concerns lawful activity and is not misleading, so as to be entitled to First Amendment protection; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) "whether it is not more extensive than is necessary to serve that interest." Central Hudson Gas & Elec. Corp. v. Public Service Commission of New

York, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).  As to the first factor, there is no suggestion that the commercial advertising at issue here involves unlawful activity or is misleading.  Therefore, the court presumes that the speech at issue is within the purview of the First Amendment.

As to the remaining factors, the Supreme Court has characterized the second through fourth Central Hudson criteria as being "whether the State's interests in proscribing [commercial speech] are substantial, whether the challenged regulation advances these interests in a direct and material way, and whether the extent of the restriction on protected speech is in reasonable proportion to the interests served." Edenfield v. Fane, 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993).  The Ordinance, which encompasses much more than the sign restrictions at issue here[7], states that it was enacted for the purpose of:

> promoting the health, safety, convenience, order, prosperity, or the general welfare of the residents; to lessen congestion in the street; to secure safety from fire, panic, and other dangers; to promote health and general welfare; to provide adequate light and air, to prevent the overcrowding of land; to prevent the undue concentration of population; to facilitate the adequate provision of transportation, public facilities, schools, parks, to facilitate initiation of the comprehensive plan; to protect the ecological, physical and visual environment for the public benefit by preventing excessive or unsightly grading which may cause disruption of natural water courses or scar natural land forms; and for other public requirements...

ATMORE, ALA., ZONING ORDINANCE, § 1.1 (1998).  Further, the first sentence of the sign portion of the Ordinance states that "[a]ll signs shall encourage a positive visual environment in harmony with the natural beauty of the area." Id. at § 9.5.  The regulations and stated purpose of the Ordinance indicate that the sign regulations at issue promote the traffic safety and aesthetics of the City.  Courts in the Eleventh Circuit have uniformly found the promotion of safety or aesthetics to constitute substantial government interests. See  Metromedia, Inc. v. City of San

---

[7] For instance, the Ordinance provides rules regarding the regulation of the size of buildings, the use of septic tanks, the design and appearance of parking areas, the use of mobile homes, and a wide array of other zoning issues.

Diego, 453 U.S. 490, 507-08, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) ("there can be no "substantial doubt that the twin goals that the ordinance seeks to further-- traffic safety and the appearance of the city--are substantial governmental goals."); Morrow, 112 F.3d at 1116 (11th Cir. 1997) (stating that aesthetics and safety have been recognized as significant governmental interests which support time, place, and manner restrictions on commercial signs); Action Outdoor Advertising, 377 F.Supp.2d at 1190 ("following Metromedia courts in the Eleventh Circuit have uniformly found the promotion of safety or aesthetics to constitute substantial government interests"). Harnish, 783 F.2d at 1539 (noting that Metromedia and its progeny conclusively establish that aesthetics are a substantial governmental interest which is entitled to great respect); Dills v. City of Marietta, Ga., 674 F.2d 1377, 1381 (11th Cir. 1982); Lamar Adver. Co. v. City of Douglasville, Georgia, 254 F.Supp.2d 1321, 1335 (N.D. Ga. 2003).  Thus, the court finds that the purpose of the Ordinance constitutes a substantial government interest.

The court finds that the third factor of the Central Hudson test is also satisfied.  As this court has previously stated, "there can be no serious question that the offsite billboard ban directly and materially advances these interests; indeed, a plurality of the Metromedia Court found that 'the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics.'" Bill Salter Advertising, Inc. v. City of Brewton, Ala.,  486 F.Supp.2d at 1332-1333.

With respect to the fourth factor, the Metromedia plurality opinion is also instructive.  In Metromedia, the Supreme Court stated as follows:

> If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs.

453 U.S. at 508, 101 S.Ct. 2882. Courts in this Circuit have found that similar bans on off-premise billboards satisfy the Central Hudson test for constitutionality. See Granite State

Outdoor Advertising, Inc. v. Cobb County, GA, 193 Fed.Appx. 900, 904-05 (11th Cir. 2006); Lockridge v. City of Oldsmar, Fla, 475 F.Supp.2d 1240, 1254-55; Action Outdoor Advertising, 377 F.Supp.2d at 1192.  Accordingly, the court finds that the Ordinance is constitutional. Summary judgment is granted in favor of defendants.

## CONCLUSION

For the reasons stated herein, defendants' motion to strike (Doc. 60) is **DENIED**, plaintiff's motion for summary judgment (Doc. 42) is **DENIED**, and the defendants' motion for summary judgment (Doc. 55) is **GRANTED**.

**DONE and ORDERED** this 19th day of March, 2008.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE